IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

ROBERT W. GRIFFIN, JR.,

        Plaintiff,

Vs.                                                                   No. 14-2018-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Robert W. Griffin, Jr.'s ("Griffin") Title II application for disability insurance benefits and Title XVI application for supplemental security income under the Social Security Act ("Act"). He filed his applications in March and April of 2010, and they were denied initially and on reconsideration. He requested a hearing before an administrative law judge ("ALJ"), and it was first convened in April of 2012 and completed on August 7, 2012. The ALJ issued his decision on September 25, 2012, and found Griffin was not disabled. (Tr. 186-198). With the Appeals Council's denial of Griffin's request for review, the ALJ's decision stands as the Commissioner's final decision. The administrative record (Dk. 8) and the parties' briefs are on file pursuant to D. Kan. Rule 83.7.1 (Dks. 9, 14 and 19), the case is ripe for review and decision.

Born in 1956 and having past relevant work as a small business

owner and wholesaler, Griffin alleges a disability beginning June 6, 2006, when he stopped working because of morbid depression, post-traumatic stress disorder, diabetes, severe chronic neurological pain, and nausea. Griffin appeals the Commissioner's decision denying benefits. He argues the ALJ failed to identify the weight given the medical opinion of Dr. McNeley-Phelps on the plaintiff's chronic nausea affecting work attendance, failed to articulate a rationale supported by record for rejecting the opinions of the treating physicians, Dr. Pro and Dr. Singh, failed to give good reasons for rejecting the third party statement of Mrs. Griffin, failed to include limitations in residual functional capacity ("RFC") for diabetic sensory polyneuropathy and for interacting with supervisors, failed to link RFC determination to specific evidence of record, and failed to resolve conflict in vocational expert's ("VE") testimony with regulatory definitions of jobs.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal

quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the

impairment or combination of impairments prevents him from performing his past work." *Id.* Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ found Griffin to have not engaged in substantial gainful activity since June 1, 2006. At step two, the ALJ found Griffin to have the following severe impairments:  "Diabetes Mellitus with Neuropathy, History of Headaches, Coronary Artery Disease, Depression, Anxiety, and History of Prescription Drug Abuse." (Tr. 188). At step three, the ALJ found that Griffin's impairments, individually or in combination, did not equal the severity of the Listing of Impairments. (Tr. 189).

Before moving to steps four and five, the ALJ determined that Griffin had the RFC to perform:

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that he is limited to repetitive work, which does not involve[] detailed instructions or tasks. Further, he can have only occasional interaction with the public and co-workers.

(Tr. 190). At step four, the ALJ found that Griffin was unable to perform his past relevant work. (Tr. 195-96). The ALJ next determined that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 196). Based on all of the above findings and conclusions, the ALJ entered his order deciding that Griffin has not been under a disability from June 1, 2006, through the date of his decision. (Tr. 197). Griffin appeals.

**FAILURE TO IDENTIFY WEIGHT GIVEN TO CONSULTING MEDICAL OPINION**

At the hearing on April 11, 2012, the ALJ found that an additional psychological evaluation was necessary which resulted in Griffin being examined in May of 2012 by a consulting psychologist, Dr. McNeley-Phelps. This psychologist submitted a written report (Tr. 789-792) which included this summary of her opinion:

> Mr. Griffin's appearance was a mixture of dishevelment (e.g. wrinkled slacks) and neatness (e.g., trimmed mustache). He tended to make negativistic, pessimistic comments throughout the interview. He reported a long history of sleep and appetite disturbance, low libido, and suicidal ideation, as well as near-constant nausea. It is not clear how his somatic complaints are affected by his dependence on pain medication or by his depression.
> Mr. Griffin appeared capable of learning and performing simple, as well as more complex, job tasks. He did not exhibit any significant impairment in his ability to concentrate or remember information. He might be somewhat challenged by interactions with others in the workplace, given his pessimistic tendencies.

(Tr. 792). The psychologist also completed a medical source statement which included the comment that "claims of chronic nausea could interfere . . . [with] work attendance." (Tr. 794). At the hearing on August 7, 2012, the ALJ referred to this completed evaluation (Ex. 25F) and it was admitted within the packet of exhibits marked 1-32F. (Tr. 215). There is no mention of or citation to Dr. McNeley-Phelps' evaluation and opinion in the ALJ's decision which does state, however, that "careful consideration of the entire record, regardless of whether it is cited in the decision" was given. (Tr. 188).

Griffin argues the court must remand the case for the ALJ to address this medical opinion and show how it was weighed and considered. The ALJ's duties include evaluating all medical opinions in the record, assigning weight to each opinion, and discussing the weight given to each. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). This is a "well-known and overarching requirement." *Martinez v. Astrue*, 422 Fed. 719, 724 (10th Cir. Apr. 26, 2011). "It is clear legal error to ignore a medical opinion." *Lopez v. Astrue*, 2012 WL 1934056 at "4 (D. Kan. May 29, 2012)(citing *Victory v. Barnhart*, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005)(citing in turn SSR 96-5P, 1996 WL 374183, at *1)). The Tenth Circuit has explained this rule's operation in these terms:

> "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions," including the opinions of state agency medical consultants.

> *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). But the need for express analysis is weakened "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC." *Id.* at 1162. And an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity. *See id.* at 1162–63. In that case, the claimant is not prejudiced "because giving greater weight to [the opinion] would not have helped her." *Id.* at 1163.

*Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014).

The Commissioner argues the ALJ's failure here to expressly discuss and weigh Dr. McNeley-Phelps' medical opinion is harmless error. Because the court is reversing and remanding for reasons stated later, the court will direct the ALJ to discuss the opinion of Dr. McNeley-Phelps on remand.

**ALJ'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

Griffin first challenges the ALJ's evaluation of Griffin's treating psychiatrist, Dr. John Pro. The ALJ afforded "little weight" (Tr. 194) to Dr. Pro's opinion noting that it covered some matters reserved to the Commissioner. The ALJ then evaluated the opinion as set out below and did so within the context of his entire decision:

> On the whole, the undersigned notes that Dr. Pro's opinion is not consistent with the other physicians' opinions on the record, as a whole. Similarly, the restrictions he placed upon the claimant are not supported by the medical evidence as a whole. In fact, the undersigned is not entirely sure Dr. Pro was even the person who drafted the responses, as it appears as though somebody else wrote on the form, as evidenced by Dr. Pro adopting different limitations than were previously marked (possibly different penmanship as well). Regardless, it appears that Dr.

> Pro relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

(Tr. 195). Griffin disputes the ALJ's rationale and denies it is supported by substantial evidence.

A "treating physician's opinion is given particular weight because of his unique perspective to the medical evidence." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). A treating physician's opinion, however, is not entitled to controlling weight "'if it is not well-supported by medically acceptable clinical and laboratory techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). A decision or finding that does not give the treating physician's opinion controlling weight does not mean that the physician's opinion was "rejected." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4). Instead, a treating physician's opinion is "still entitled to deference and subject to weighing under the relevant factors." *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (citing 20 C.F.R. § 404.1527). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the

area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). An ALJ is not required to discuss each of these factors, but the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Asture*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks and citations omitted). Nothing more is required than for the ALJ to provide "good reasons in his decision for the weight he gave to the treating sources' opinions." *Id*.

Contrary to Griffin's argument, the ALJ did not construe Dr. Pro's opinion as exclusively an opinion on the ultimate issue of disability which is a matter reserved to the Commissioner. See 20 C.F.R. § 404.1527(d)(1). The ALJ's decision simply recognized that, "[s]uch opinions, even when offered by a treating source, are never entitled to controlling weight or given special significance." *Davison v. Colvin*, --- Fed. Appx. ---, 2014 WL 7340066, at *6 (10th Cir. Dec. 22, 2014) (citing Soc. Sec. Ruling (SSR) 96-5p, 1996 WL 374183, at *1, *2, *5 (July 2, 1996)). The ALJ did not err in stating this general proposition.

On the other hand, Dr. Pro did complete a mental RFC assessment (Tr. 613-615) and a Mental Impairment Evaluation (Tr. 616-619) in February of 2010. In doing so, Dr. Pro identified specific functional limitations and, in

support, he attached a letter which reads in part:

> I first met Mr. Griffin in 1996 when he was suffering from depression. At that time, he was very depressed and suicidal. He received two courses of electroconvulsive therapy for depression. He has a history of overdoses in the past.
> . . . .
> Currently, Mr. Griffin suffers from chronic depression and has trouble with activities of daily such as getting out of bed and going to work regularly. He recently lost his business, not only because of the economy but because of his inability to keep up the work pace.
> He continues to have chronic headaches and back pain that have not responded to a variety of drugs, including narcotics. I last say MR. Griffin on January 20, 2010. He was seen for 45 minutes of medical psychotherapy. At that time, he was alert and oriented and was asking for narcotic strength medications because of his severe pain. I reminded him of the high addiction potential of this medication and declined to give him any. Instead, I told him to try to take Topamax up to 100 mg a day. He is currently taking this now. He continues to take Xanax 1 mg several times a day and Cymbalta 90 mg as well as Nexium for his stomach. There drugs are helping him, but he remains depressed and marginally compensated. Any additional stress could bring about a worsening of his depression.
> Accompanying this letter is the form that I was given from Mr. Burnett to quantitate Mr. Griffin's inability to work full time.

(Tr. 620). The ALJ did not identify what aspect of Dr. Pro's opinion was rejected as not entitled to controlling weight because it was on an issue reserved to the Commissioner. The court "cannot meaningfully review the ALJ's determination" when it lacks an explanation or reasons for a conclusion. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). "Our case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step

inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (first, analyze whether the opinion is entitled to controlling weight on particular matters because it is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record;" and second, if opinion is not given controlling weight, then analyze what weight to give it and specify "good reasons" that are "tied to the factors specified in the cited regulations for this particular purpose." *Id.*). Here the ALJ's decision does not follow this two-step procedure, and "[e]xplicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review." *Chrismon v. Colvin*, 531 Fed. Appx. 893, 901 (10th Cir. 2013).

   The ALJ summarized Dr. Pro's RFC opinions on Griffin as placing significant restrictions and limitations on him and as indicating he would miss at least 3 days of work each month. In giving these opinions "little weight," the ALJ observed they were not consistent, as a whole, with the opinions of other physicians and the medical evidence of record. As Griffin argues, the ALJ's decision fails to identify and discuss the inconsistencies between Dr. Pro's opinion and the opinions of other physicians or the medical evidence. The ALJ's decision does not cite anything for this statement. *Lopez v Astrue*, 371 Fed. Appx. 887, 892 (10th Cir. 2010). "It may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision,

but that is best left for the ALJ himself to do in the proceedings on remand." *Krauser*, 638 F.3d at 1331. The ALJ here does not refer to any earlier discussion or "identify those inconsistencies with any clarity." *Crawford v. Colvin*, 560 Fed. Appx. 729, 732 (10th Cir. 2014).

Nor is it apparent that substantial evidence necessarily supports the conclusion of inconsistencies in the medical evidence. The ALJ's discussion and characterization of the objective medical evidence here is stated most fully and representatively in this paragraph of his decision:

> The evidence indicates that the claimant has a history of headaches, diabetes and peripheral neuropathy. It appears that the claimant has been experiencing global headaches for the last 30+ years. However, there objective medical evidence does not indicate that these impairments are very limiting and stem from an unknown etiology (the claimant's "headache does not seem to correlate with any organic cause"). His treating physician has noted that given the fact that his headaches are constant, unremitting, and do not dissipate, they do meet the criteria for a migraine headache. Further, the claimant underwent a neurological consult in August 2010 for evaluation of headaches and an abnormal MRI (diagnostics had noted some atrophy). The treating physician noted that the claimant "has long-standing chronic cephalgia with migrainous characteristics of sharp stabbing pain, photophobia, phonophobia, nausea and vomiting. This is compounded by significant stressors, PTSD, and depression. [However], his MRI mild atrophy is more of an age related phenomenon and not contributing to his headache phenomenon and this was discussed. I discussed chronic cephalgia and the theory of trigeminal central sensitization and the role of managing chronic pain altering multiple neurotransmitters. We discussed realistic expectations for trying medications in different combinations for many months before commenting on efficacy." The doctor also noted: "He would like to be placed on codeine which could not be managed through this office and this was discussed. We talked about the importance of nonpharmacologic management of his headaches including adequate sleeping habits, drinking plenty of fluids and not skipping meals." The neurologist also noted evidence of a

> diabetic peripheral polyneuropathy and discussed the importance of strict control of his blood sugars to help decrease progression of his neuropathy; this indicates it is an impairment the physician felt could be relatively controlled and stable with the right lifestyle choices. It is important to note that no resulting functional limitations were ever noted by the specialist. (Ex. 3F, 6F, 7F, 9F, 10F, 18F, 24F, 26F, 27F, 31F, 32F).

(Tr. 192). The ALJ also looked at this same neurological consult as evidence that the claimant was not "interested in non-pharmacologic management, non non-narcotic medications despite the specialist recommendation." (Tr. 193). Citing Dr. Pro's treating records and references to concerns over Griffin's addictive tendencies and personality, the ALJ concludes:

> On the whole, the evidence does not indicate the claimant is struggling with depression/anxiety, but rather, that he is struggling with pain management. What makes it more concerning for the undersigned is that he repeatedly declines referrals for management and repeatedly asks for narcotics. (Ex. 5F, 8F, 12F, 15F, 17F).

(Tr. 193). For the most part, the above constitutes the ALJ's discussion of the medical evidence other than summary references to the non-examining agency physicians. As part of his final conclusions, the ALJ states that, "[a]side from Dr. Pro, and Dr. Singh, specifically discussed above, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (Tr. 195).

      As quoted and summarized above, the ALJ placed great weight on the opinion of the neurological consultant (Ex. 9F) given in August of 2010. What the ALJ fails to quote or mention in his discussion of the consultant's

14

report is the following:

> I offered him a trial of either Depakote ER versus gabapentin in addition to his Cymbalta. Side effects of both medications were discussed in detail. He is quite hesitant but I am not able to give him some thing that will give him 8 hours of relief in order for him to work. He is going to think about options for neuropathic pain agents as he has done this in the past.

(Tr. 693, Ex. 9F). The court does not read this part of the neurological consultant's report as supporting the ALJ's conclusion that the specialist does not recognize any functional limitations from pain. If anything, the opinion is quite clear that the neurologist has nothing "to give him . . . that will give him 8 hours of relief in order for him to work." *Id.* The ALJ's selective omission of this statement from the neurological consultation undermines the ALJ's characterization of the objective medical evidence in this case, as quoted above.

In addition, the records of the treating psychiatrist, Dr. Zaderenko, also contradict the ALJ's conclusion of no other medical opinions "indicating that the claimant is disabled." (Tr. 195). In his initial psychiatric evaluation on January 20, 2012, Dr. Zaderenko diagnosed the following condition and treatment plan:

> The Patient is experiencing a severe, chronic, and <u>disabling</u> depression. In addition, he c/o of unremitting nausea and headaches. Has tried different remedies for headaches including opioids and anticonvulsants with no response.
> The Patient agrees to add Mirtazapine 30 mg po at hs to address his depression and hopefully get some benefit for nausea. Discussed about side effects including weight gain which may affect his type IIDM as well

15

as drowsiness which in conjunction with high dose Alprazolam may impair his ability to drive. Reminded Patient not to drive if he is drowsy.

(Tr. 781)(underlining added). Progress notes made by Dr. Zaderenko over the next several months mention, "depressed and anxious," "problems with memory and concentration" in that Griffin is unable to remember conversations from the last visit, and "[p]atient's flow of thought is tangential and his concentration and attention, judging by his difficulty maintaining a goal oriented flow of thought, are poor." (Tr. 779). Contrary to the ALJ's conclusion, Dr. Zaderenko's treatment notes include an opinion and evidence of a disabling condition.

The court expects the ALJ on remand will have more than speculation for questioning Dr. Pro's completion of the Mental RFC assessment signed by him. There is nothing that appears on the face of this document to indicate that the opinions expressed therein are not Dr. Pro's. Indeed, they are consistent with Dr. Pro's opinions found on the Mental Impairment Evaluation and expressed in the letter written on his practice's letterhead. (Tr. 616-620). All three documents are signed. The court similarly finds the ALJ's decision fails to identify the inconsistencies between Dr. Singh's opinion and her treatment notes and other medical evidence. The court cannot conduct a meaningful review without more in the ALJ's decision.

The plaintiff raises other issues which the court will not address here, because the ALJ's resolution of this case on remand may impact them.

On remand, the court expects the ALJ will have the opportunity to make a full and proper evaluation of all the medical evidence, in particular the medical opinions of Griffin's treating physicians, Dr. Pro and Dr. Singh.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 27th day of March, 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge